UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Court File No. 18-cr-281 (NEB/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Darwin Lee Lussier, Sr., | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendant Darwin Lee Lussier, Sr.'s (hereinafter "Defendant") Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 32], upon Defendant's Motion for Hearing Pursuant to Franks v. Delaware, [Docket No. 33], and upon Defendant's Motion to Dismiss Indictment, or alternatively to Suppress Evidence and Testimony Due to Destruction and Spoliation. [Docket No. 35].

The Court held a motions hearing on January 14, 2019, regarding the parties' pretrial motions.[1] At the motions hearing, the parties requested the opportunity to submit supplemental briefing, which was completed on February 12, 2019, at which time all motions, [Docket No. 32; Docket No. 33; Docket No. 35], subject to Report and Recommendation were under advisement.

For the reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 32], be **GRANTED**; Defendant's Motion for Hearing Pursuant to Franks v. Delaware, [Docket No. 33], be **DENIED**

---

[1] The Court addressed the parties' pretrial motions for discovery and production of evidence by separate Order. [Docket No. 44].

**as moot**; and Defendant's Motion to Dismiss Indictment, or alternatively to Suppress Evidence and Testimony Due to Destruction and Spoliation, [Docket No. 35], be **DENIED**.

## I.    BACKGROUND AND STATEMENT OF FACTS

### A.  Background

Defendant is charged with one count of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153(a); and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a). (Indictment [Docket No. 15]).

### B.  Facts

In his Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 32], Defendant moves the Court for an Order suppressing any evidence obtained as a result of the October 8, 2018, execution of the search warrant for the premises and the person described as:

> 14921 Circle Pines Rd, Red Lake, MN 56671 located in the little rock district. Known to be the Darwin Lussier residence described as a walking shield house located in the circle pines area, road across from the water tower, 2nd house on the left.

(Gov't Ex. 1 at 1).[2]

The record presently before the Court indicates that on October 8, 2018, Criminal Investigator Ronald Leyba's (hereinafter "CI Leyba") applied for a search warrant. The affidavit in support of the search warrant now at issue, in addition to CI Leyba's credentials and qualifications, stated the following:

> Your affiant is involved in an investigation involving Darwin Lee Lussier DOB: 05-28-1966 in regards to an incident that occurred on October 7, 2018 on an assault on Dawn Neadeau.

---

[2] Government's Exhibit 1 is the warrant application, supporting affidavit, and warrant now at issue.  At the motions hearing, the Government, without objection, offered the warrant application, supporting affidavit, and warrant now at issue into evidence as Government's Exhibit 1. (January 14, 2019, Motions Hearing, Digital Recording at 2:50–2:51 p.m.).

On October 7, 2018, Officer Hamre responded [to] the residence and was advised and took pictures of Dawn Neadeau's head where she was struck with an object and had multiple bruises from this assault. Dawn was taken to IHS for her wounds. Officer Hamre looked for the suspect named by the victim as: Darwin Lee Lussier. Ofc. Hamre stated he had fled into the woods. Ofc. Hamre was advised that Darwin has (2) two bench warrants for his arrest for drugs and other incidents. Ofc. Hamre was made aware that Darwin would not allow the victim to leave the residence.

As of October 5th, 2018 I am aware that Darwin has been utilizing his home as narcotic location to supply and distribute narcotics.

On March 15, 2018, I Criminal Investigator Ron Leyba was notified by Criminal Investigator Kelly Brunelle that he was informed that a house in circle pines was selling narcotics and that they have a lot of methamphetamine there. Information provided to CI Brunelle was that people from Mahnomen were dropping off a load of narcotics at the residence of Darwin Lussier.

On March 15, 2018, I Criminal Investigator Ron Leyba collaborated this information and requested a marked unit to check for large amount of traffic in the circle pines area and confirmed that there was an unusual amount of traffic coming from this area.

Your affiant knows that Patrick Desjarlait has an extensive criminal history which includes (2) controlled substances crimes, assaults. Your affiant verified on March 16, 2018, that Patrick Desjarlait currently has Tribal warrants for his arrest for active contempt.

(Gov't Ex. 1 at 3) (errors in original).

In addition to the above information, CI Leyba included in the affidavit that he possesses training and experience in investigative techniques regarding narcotics and narcotics enforcement. (Gov't Ex. 1 at 2). CI Leyba also included in the affidavit that he has knowledge, through training and experience, of the evidentiary value of cellular phones and the various ways cellular phones can be used to further a drug-related crime. (Gov't Ex. 1 at 3).

## II.    DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE. [DOCKET NO. 32].

In his Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 32], Defendant seeks to suppress evidence obtained as a result of the execution of the October 8, 2018, search warrant. Defendant argues that the search warrant was issued absent a sufficient

showing of probable cause. (Def.'s Mem., [Docket No. 45], at 10).  Specifically, Defendant argues that: (1) the search warrant application and affidavit lack a nexus between the criminal activity and the searched residence (Id. at 13); (2) the affidavit relied on wholly conclusory and/or second-hand information (Id. at 18); (3) the affidavit supplied "stale and unrelated information" (Id. at 23); and (4) that the Leon good-faith exception to the warrant requirement does not save the search conducted in the present case. (Id. at 27).

### A.  Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d

692, 694 (8th Cir. 2009) (quoting <u>United States v. Reivich</u>, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" <u>United States v. Wiley</u>, No. 09–cr–239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting <u>United States v. Solomon</u>, 432 F.3d 824, 827 (8th Cir. 2005)) (alterations in <u>Wiley</u>). In addition, the issuing court's "determination of probable cause should be paid great deference by reviewing courts." <u>Gates</u>, 462 U.S. at 236 (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." <u>Id.</u> at 238–39 (quoting <u>Jones v. United States</u>, 362 U.S. 257, 271 (1960)).

**B. Analysis**

**i. Probable Cause**

As previously noted, Defendant argues that the search warrant was issued absent a sufficient showing of probable cause. (Def.'s Mem. [Docket No. 45], at 10).  Specifically, Defendant argues that: (1) the search warrant application and affidavit lack a nexus between the criminal activity and the searched residence (<u>Id.</u> at 13); (2) the affidavit relied on wholly conclusory and/or second-hand information (<u>Id.</u> at 18); (3) the affidavit supplied "stale and unrelated information" (<u>Id.</u> at 23); and (4) that the <u>Leon</u> good-faith exception to the warrant requirement does not save the search conducted in the present case. (<u>Id.</u> at 27).

Defendant argues that the information in CI Leyba's affidavit supporting the application for the October 8, 2018, search warrant contained no facts to establish that evidence of any crime whatsoever would be found at the residence described as 14921 Circle Pines Rd, Red Lake, MN

56671. In response, the Government asserts that Defendant "abandons viewing the supporting affidavit with a common sense, totality of the circumstances approach and rather dissects each word and each sentence with a hyper technical eye towards probable cause." (Mem. in Opp., [Docket No. 49], at 5).

Probable cause determinations "d[o] not deal with hard certainties, but with probabilities." Gates, 462 U.S. at 231. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). Additionally, facts supporting a search warrant "must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." United States v. Palega, 556 F.3d 709, 715 (8th Cir. 2009) (quoting United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993)).

To establish probable cause for the issuance of a search warrant, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." Tellez, 217 F.3d at 550 (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999) (citing United States v. Christenson, 549 F.2d 53, 57 (8th Cir. 1977)). Additionally, whether probable cause exists to support the issuance of a search warrant depends on the totality of the circumstances: "[i]n determining whether probable cause

exists, we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning." United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001).

Defendant argues that the affidavit in support of the search warrant lacked a sufficient nexus to the assault at issue in the present case. This Court agrees.

With regard to the assault, the affidavit in support of the application for the search warrant lacks any substantial basis to conclude that there was a reasonable likelihood that evidence of the assault would be found at the residence described as 14921 Circle Pines Rd, Red Lake, MN 56671. According to the affidavit, CI Leyba believed he would find the weapon used in the assault at Defendant's residence. (Gov't Ex. 1 at 1). In his affidavit supporting the application for the search warrant, the only factual information related to the assault included by CI Leyba was that, "On October 7, 2018, Officer Hamre responded [to] the residence and was advised and took pictures of Dawn Neadeau's head where she was struck with an object and had multiple bruises from this assault." (Gov't Ex. 1 at 3). He further attested that "Officer Hamre looked for the suspect named by the victim as: Darwin Lee Lussier. Ofc. Hamre stated he had fled into the woods." (Gov't Ex. 1 at 3). He lastly attested that "Ofc. Hamre was made aware that Darwin would not allow the victim to leave the residence." (Gov't Ex. 1 at 3).

On its face, the information included in CI Leyba's affidavit is insufficient to show that there was probable cause to search Defendant's residence for evidence of any weapon used in of the assault. While the affidavit seeks to search the premises described as 14921 Circle Pines Rd, Red Lake, MN 56671, the affidavit fails to show that evidence of the alleged assault would be found there. Most notably, the affidavit does not indicate that the alleged assault occurred at Defendant's residence. While the affidavit generically refers to a residence, it does not indicate

whose residence the assault occurred at, nor whose residence Officer Hamre responded to upon the report of an assault.

Furthermore, nothing in the affidavit shows what type of weapon was used in the alleged assault, where it came from, where it went, nor how or why law enforcement thought the weapon would be located in Defendant's residence.

In contrast, the Court compares, for example, the facts in <u>Tellez</u>, 217 F.3d at 549, in which the Eighth Circuit held that the discovery of drugs on the defendant, a known drug dealer, shortly after leaving his home in response to an order placed by a customer was sufficient to establish probable cause for a search of defendant's home. <u>Id.</u> ("In this case there was evidence that Mr. Tellez was engaged in a continuing course of criminal activity, and we believe that it could fairly be inferred that he was keeping a supply of drugs and perhaps other evidence related to his drug dealing in his home."). The same may not be said of the content of the affidavit in support of the warrant now at hand. Here, as previously discussed, nothing in the affidavit shows that the alleged assault happened at Defendant's residence or why law enforcement thought the weapon used in the alleged assault would be found there.

> For probable cause to exist, a magistrate need not determine that the evidence sought is in fact on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

<u>United States v. Peacock</u>, 761 F.2d 1313, 1315 (9th Cir. 1985) (internal citations omitted) (overruled in part on other grounds). In the present case, on its face, the affidavit in support of the search warrant was insufficient to allow the Tribal Judge to conclude that any evidence of the alleged assault could reasonably be found at Defendant's residence described as 14921 Circle Pines Rd, Red Lake, MN 56671.

In addition, with regard to the drugs and related evidence also referenced by the affidavit in support of the application for the search warrant, the affidavit here too similarly lacked a substantial basis to conclude that evidence of drug-related crimes would be found at the residence described as 14921 Circle Pines Rd, Red Lake, MN 56671.

It is evident from the face of the affidavit submitted in support of the search warrant now at issue that, regarding any drug-related evidence sought, the sole basis for the search warrant in this regard was anonymous information received by law enforcement.

"[A]n anonymous tip is 'insufficient in itself to support a finding of probable cause.'" United States v. Lindsey, No. 10-cr-15 (JNE/JJK), 2010 WL 4822939, *32 (D. Minn. July 20, 2010) (quoting United States v. Wells, 223 F.3d 835, 839 (8th Cir. 2000)). However, "[w]hen information supplied by an informant forms the basis for probable cause in a warrant, the 'core question in assessing probable cause . . . is whether the information is reliable.' Informants without a track record of providing reliable information may be deemed reliable if their information is independently corroborated by other evidence." United States v. Neiman, 520 F.3d 834, 839–40 (8th Cir. 2008).

Thus, anonymous tips may not always be insufficient to support probable cause to issue a search warrant; where even some of the information provided by an anonymous source is corroborated by law enforcement, the anonymous tipster may be deemed sufficiently reliable that his or her information supports probable cause to issue a search warrant. See, United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013) ("'If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.'" (citation omitted)); United States v. Adkins, No. 15-cr-05 (DWF/LIB), 2015 WL

3463377, *2 (D. Minn. June 1, 2015) (declining to overrule conclusion that an "anonymous tipster was sufficiently reliable" where that information was corroborated by law enforcement "and was reasonably considered to involve an ongoing offense in light of the location, persons, timing, and the totality of the [relevant] facts").

In the case presently before the Court, however, there is nothing in the affidavit submitted in support of the search warrant which indicates that law enforcement[] ever actually corroborated any of the anonymous information received. There is no indication in the affidavit as to whether any of the anonymous information was from an informant's firsthand experience, which could also lend reliability to the anonymous informant's statements. See, Stevens, 530 F.3d at 718–19 (noting that firsthand information entitles a tip to greater weight than might otherwise be given). The affidavit submitted in support of the search warrant is simply devoid of any information, nor even contains any assertions whatsoever, regarding the anonymous informants' veracity, reliability, or basis of knowledge, other than the general statement that on March 15, 2018, the officers were informed that a house in circle pines was selling narcotics at the residence of Defendant. (See, Gov't Ex. 1 at 3).

The United States Supreme Court held in Illinois v. Gates that merely "[a]n officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is . . . inadequate" to establish the existence of probable cause sufficient to support the issuance of a search warrant. 462 U.S. 213, 239 (1983).[3]

---

[3] The single sentence in the affidavit providing that "[a]s of October 5th 2018 I [CI Leyba] am aware that Darwin has been utilizing his home as narcotic location to supply and distribute narcotics[,]" does not save the warrant from its deficiencies. If by this sentence CI Leyba is referencing an independent factual basis for this statement there is nothing to set forth such information. A warrant may not properly issue on an officer's bald assertion. Gates, 462 U.S. at 239. If this sentence is supported by the next 3 paragraphs referencing March 2018, anonymous source information, then is it deficient for the same lack of facts explaining the basis for reliability of the anonymous information as already addressed.

In the case here, the affidavit in support of the search warrant contains even less detailed content than the affidavit at issue in <u>Gates</u>; it does not contain any specific information to establish the credibility of the anonymous information.[4] In light of the long-established and well-settled jurisprudence requiring more than mere uncorroborated information by an anonymous informant to establish probable cause to search an individual's home, the affidavit submitted in this case in support of the search warrant now at issue does not establish probable cause either on the basis of the alleged October 2018, assault or the alleged March 2018, drug activity to issue the warrant to search Defendant's residence.

Furthermore, to the extent that CI Leyba attempted to base his affidavit in support of the search warrant on the basis of the alleged drug activity, the anonymous and uncorroborated nature of information notwithstanding, the Court finds that the anonymous information contained in the affidavit in support of the search warrant is also stale.

"It is axiomatic that probable cause must exist at the time of the search and not merely at sometime earlier." <u>United States v. Kennedy</u>, 427 F.3d 1136, 1141 (8th Cir. 2005) (citing <u>United States v. Formaro</u>, 152 F.3d 768, 771 (8th Cir. 1998)); <u>See</u>, <u>United States v. Ozar</u>, 50 F.3d 1440, 1446 (8th Cir. 1995), cert. denied, 516 U.S. 871 (1995). Therefore, a lapse of time, between the observations of a witness and the issuance of the search warrant, like a delay in executing a search warrant, "may make probable cause fatally stale." <u>United States v. Maxim</u>, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995).

In <u>United States v. Button</u>, 653 F.2d 319 (8th Cir. 1981), for example, the Court held that the information in an affidavit in support of a search warrant for a home was too stale to establish probable cause where the police officer affiant averred only that "[t]he information he received

---

[4] In the affidavit at issue, CI Leyba states conclusorily that he corroborated the March 15, 2018, information received, but the affidavit is devoid of any facts or explanation as to when or how the anonymous information was corroborated.

from the first informant came to him 'over the past six months'" prior to the date of the affidavit. Button, 653 F.2d at 324. Although the affidavit in Button reported the informant's statement that the defendant "is currently supplying Angel Dust to the person close to informant," the informant's use of the present tense did not establish the currency of the information because "[t]he present tense is suspended in the air; it has no point of reference, it speaks, after all, of the time when an anonymous informant conveyed information to the officer, which could have been a day, a week, or months before the date of the affidavit." Id. at 325. Faced with an indeterminate time lapse of up to six months between the anonymous informant's statement that the defendant "is currently supplying Angel Dust" and the police officer's decision to act on that statement, the Button Court assumed that the informant's knowledge came from the most remote part of the time period during which the police officer was in contact with the informant.

In the present case, unlike in Button, there is no doubt whatsoever that six months had in fact lapsed between the time the officers received the anonymous information and the time when the officers actually attempted to act on that information by application for a search warrant. The only specific effort at corroboration described in the affidavit of CI Leyba on October 8, 2018, says that law enforcement observed that there was an unusual amount of traffic in the circle pines area on March 15, 2018. There is no other corroboration described at any time. In accordance with the holding of the Button Court, because law enforcement did not act on the anonymous March 2018, information until approximately six months later, the Court finds that the information was stale, and therefore, it did not support a finding of probable cause on October 8, 2018.

Upon a four corners review of CI Leyba's affidavit in support of the search warrant at issue, the Court finds that the issuing Red Lake Tribal Judge did not have a sufficient basis upon which to believe that probable cause existed for the issuance of the search warrant. "[A]n affidavit

supporting a search warrant needs to establish only that the evidence of a crime—*any* crime—will probably be found, not that the evidence of a specific crime will probably be found." United States v. Bailey, Case No. 14-cr-270 (PJS/TNL), 2015 WL 317372, *2 (D. Minn. Jan. 26, 2015). Here, the affidavit in support of the search warrant did not establish probable cause that evidence of the alleged October 7, 2018, assault, the alleged March 2018, drug-related activity, or any other crime, would be found at the residence to be searched on October 8, 2018.

###    ii.    Good-Faith Exception

The Government argues that even if probable cause to issue the October 8, 2018, search warrant for Defendant's home did not exist, the evidence discovered from the execution thereof should not be suppressed because "based on the totality of the circumstances, probable cause existed to authorize the search" of Defendant's residence. (Mem. in Opp., [Docket No. 49], at 8–10). Defendant naturally disagrees. (Mem. in Supp., [Docket No. 45], at 27–39).

"'A violation of the Fourth Amendment usually triggers exclusion of evidence obtained by way of the violation from a subsequent criminal prosecution.' 'Because exclusion is a prophylactic remedy, however, there are some instances where a Fourth Amendment violation does not trigger the exclusionary rule.'" United States v. Rodriguez, 834 F.3d 937, 941 (8th Cir. 2016). One such instance was recognized in United States v. Leon, 468 U.S. 897 (1984), and exists "'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even if the warrant is subsequently invalidated.'" See, Rodriguez, 834 F.3d at 941 (quoting Leon, 468 U.S. at 920).

However, the good-faith exception does not apply if:

(1) the affiant mislead the issuing judge with a knowing or reckless false statement; (2) the issuing judge wholly abandoned [his or] her judicial role; (3) the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in

its existence entirely unreasonable"; or (4) the warrant was "so facially deficient"
that the executing officer could not reasonably presume its validity.

United States v. Notman, 831 F.3d 1084, 1089 (8th Cir. 2016) (quoting Leon, 468 U.S. at 923).

"'In assessing whether the officer relied in good faith on the validity of a warrant, [the Court] consider[s] the totality of the circumstances, including any information known to the officer but not included in the affidavit.'" United States v. Johnson, 848 F.3d 872, 879 (8th Cir. 2017) (citations omitted). The Court's "inquiry is confined to 'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Hopkins, 824 F.3d 726, 733 (8th Cir. 2016) (quoting Leon, 468 U.S. at 922 n.23).

The Government's contention in the present case that Defendant cannot show that "the affidavit was so lacking in indicia of probable cause that reliability on the issuance was unreasonable," (Mem. in Opp., [Docket No. 49], at 8), is on the present record unpersuasive.

"An officer may not rely entirely on the [issuing judge's] finding of probable cause when the application for the warrant so lacks probable cause that the officer cannot have a reasonable belief in its existence." United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014) (citing Malley v. Briggs, 475 U.S. 335, 344–45 (1986)). As already set forth above, the well-established and long-settled jurisprudence on probable cause clearly holds that uncorroborated anonymous information cannot by itself establish probable cause to issue a search warrant. See, e.g., Gates, 462 U.S. at 239; Aguilar v. Texas, 378 U.S. 108, 109–16 (1964), abrogated on other grounds by Gates, 462 U.S. at 225–39; Lindsey, 2010 WL 4822939, at *32.

According to the affidavit submitted in support of the search warrant now at issue, at the time CI Leyba drafted the affidavit, he had been a police officer for approximately seven years. (Gov't Ex. 1 at 2). It is objectively unreasonable for an officer with seven years of experience to

present a search warrant affidavit to a judge when that affidavit contains only uncorroborated information obtained from anonymous sources. See, United States v. Nelson, No. 4-cr-4651 (DWF/JSM), 2005 WL 1355025, *3 (D. Minn. June 2, 2005) (finding it "objectively unreasonable for an officer with 34 years of experience to present a search warrant affidavit to a judge with only conclusory assertions"); United States v. Loud, No. 17-cr-2931 (ADM/LIB), 2018 WL 3104259, at *6 (D. Minn. Mar. 21, 2018) (finding it "objectively unreasonable for an officer with over 10 years of experience to a judge when that affidavit contains only uncorroborated information obtained from anonymous callers.").

Moreover, CI Leyba drafted and submitted the affidavit in support of the warrant to search Defendant's home that is now at issue. The burden is on the Government to demonstrate that a search was not in violation of the Constitution, and here the Government has provided no evidence that CI Leyba was not involved in execution of the search at issue. The fact that CI Leyba drafted the deficient application for, and applied to the Tribal Judge for the search warrant, makes it reasonable in the absence of any other evidence from the Government to infer that he also was involved in the subsequent execution of the search now at issue. This is significant as it invalidates any argument that the executing officers were unaware of the patent defects in the affidavit submitted in support of the search warrant. See, Nelson, 2005 WL 1355025, at *3; See in contrast, Herring v. United States, 555 U.S. 135, 139–47 (2009) (finding that where officers executing the warrant were in no way culpable for the error rendering the warrant invalid, exclusion of subsequently discovered evidence was not required). "An officer [may] not 'obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.'" Herring, 555 U.S. at 146 (quoting Leon, 468 U.S. at 923 n. 24).

Although this Court's review of the issuing Tribal Judge's probable cause determination is restricted to the four corners of the affidavit, "when assessing the officer's good faith reliance on a search warrant under the <u>Leon</u> good faith exception, we can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit." <u>Farlee</u>, 757 F.3d at 819. Here, beyond mere legal conclusions, the Government does not argue any specific facts that would indicate that the <u>Leon</u> good-faith exception should apply in the present case.

"<u>Leon</u> teaches us that the suppression of evidence occurs only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." <u>Nelson</u>, 2005 WL 1355025, *4. "[T]he exclusionary rule is designed to deter police misconduct," and "an officer [cannot] manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" <u>Leon</u>, 468 U.S. at 916, 923 (citations omitted).

In the case presently before the Court, CI Leyba had approximately seven years of experience in law enforcement, he prepared the affidavit submitted in support of the application for a search warrant, obtained the search warrant from the Tribal Judge, and presumably participated in the execution of the search at issue. It was therefore objectively unreasonable for CI Leyba to believe that the affidavit, which contained stale, uncorroborated information received from anonymous sources established probable cause sufficient to justify the issuance of a warrant to search Defendant's home on October 8, 2018.

For these reasons, the <u>Leon</u> good-faith exception does not operate to prevent exclusion of the evidence obtained by the search of Defendant's home. As the Court noted in <u>Nelson</u>: "[t]o

conclude otherwise would sanction the preparation and use of such deficient affidavits." 2005 WL 1355025, at *4.

Accordingly, the undersigned recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 32], be **GRANTED**.

## III.    DEFENDANT'S MOTION FOR HEARING PURSUANT TO <u>FRANKS V. DELAWARE</u>. [DOCKET NO. 33].

Defendant seeks a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). (Mem. in Supp. [Docket No. 34]). In <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978), the United States Supreme Court stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

In other words, "[a] defendant may obtain a <u>Franks</u> hearing if (1) he makes a 'substantial preliminary showing' that the affiant intentionally or recklessly included a false statement in the warrant affidavit, and (2) the false statement was 'necessary to the finding of probable cause.'" <u>United States v. Shockley</u>, 816 F.3d 1058, 1061 (2016) (citations omitted). The Eighth Circuit "has extended <u>Franks</u> to allow challenges to affidavits based on deliberate or reckless omissions." <u>United States v. Gater</u>, 868 F.3d 657, 659 (8th Cir. 2017).

In the case presently before the Court, Defendant contends that CI Leyba's statements in the affidavit in support of the search warrant now at issue were made in reckless disregard for the truth and with deliberate omissions. (Mem. in Supp., [Docket No. 34], at 3).

Because the Court has found that the affidavit submitted in support of the search warrant now at issue in the present case clearly failed on its face to set forth sufficient information to support a finding of probable case, the Court need not address the <u>Franks</u> argument. See, <u>United</u>

States v. Sager, 743 F.2d 1261, 1266 (8th Cir. 1984) ("We did not reach the Franks point in our prior opinion, since our conclusion that the affidavit, even assuming that it was completely true, did not establish probable cause made it unnecessary to face the issue."); See also, U.S. v. Race, No. 11-cr-6157G, 2015 WL 576171, *24 n. 22 (W.D. N.Y. Feb. 11, 2015) ("Having concluded that the evidence should be suppressed, I need not reach defendants' alternative argument that the warrant was invalid under Franks because it contained material omissions and false or misleading information.").

Accordingly, the undersigned recommends that Defendant's Motion for Hearing Pursuant to Franks v. Delaware, [Docket No. 33], be **DENIED as moot**.

## IV.    MOTION TO DISMISS INDICTMENT. [DOCKET NO. 35].[5]

Defendant asks this Court to dismiss the Indictment on the grounds that law enforcement destroyed drug and paraphernalia evidence in bad faith. (Mem. in Supp., [Docket No. 45], at 41). Specifically, Defendant argues that law enforcement acted in bad faith because: (1) CI Leyba's training experience informed him that he should not destroy the seized drug and paraphernalia evidence; (2) the drug related evidence law enforcement destroyed was the drug evidence sought in part by the search warrant at issue; (3) the drug evidence could potentially support a voluntary intoxication defense; and (4) the destroyed drug evidence possessed an exculpatory value that was apparent before the evidence was destroyed and is of such a nature that Defendant is unable to obtain evidence by other reasonably available means. (Id. at 40–47).

---

[5] In his Motion to Dismiss Indictment, [Docket No. 35], Defendant alternatively requested the Court suppress evidence and testimony due to the destruction and spoliation of evidence. However, in his Memorandum in Support, Defendant withdrew this alternative request for relief. (See, Mem. in Supp., [Docket No. 45], at 1).

### A. Standard of Review

The Due Process Clause requires the prosecution to disclose to the defendant material exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 87 (1963). Suppression of such evidence is a due-process violation, regardless of whether the prosecution acted in good faith or bad faith. Id.

However, the government's failure to preserve potentially exculpatory evidence does not violate the Due Process Clause unless the government acted in bad faith, the evidence had apparent exculpatory value, and the defendant was unable to obtain comparable exculpatory evidence through reasonably available means. See, United States v. Malbrough, 922 F.2d 458, 463 (8th Cir. 1990) (citing California v. Trombetta, 467 U.S. 479, 488–89 (1984)). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). The defendant has the burden of proof to establish bad faith by the government. United States v. Webster, 625 F.3d 439, 447 (8th Cir. 2010).

### B. Analysis

In the present case, Defendant has been indicted only for assault with a dangerous weapon and assault resulting in serious bodily injury. (Indictment [Docket No. 15]). Defendant, however, now seeks to dismiss the assault indictment because evidence of drug and paraphernalia seized by law enforcement, after being photographed by law enforcement, was destroyed. (See, Def.'s Exs. 1–7).[6]

---

[6] Defendant's Exhibit 1 is a picture of the October 8, 2018, search warrant now at issue. Defendant's Exhibit 2–7 are photographs of drug and paraphernalia evidence found at Defendant's residence. At the motions hearing, Defendant, without objection, offered Exhibits 1–7 into evidence. (January 14, 2019, Motions Hearing, Digital Recording at 3:00–3:01 p.m.).

Notably, the Eighth Circuit has repeatedly found that the destruction of evidence is not an act of bad faith when some evidence of the crime was preserved. See, United States v. Gray, 128 F.3d 1109, 1110 (8th Cir. 1997) (finding there was no bad faith where the agent first photographed and sampled bottles containing ephedrine tablets before destroying the bottles); United States v. Scoggins, 992 F.2d 164, 167 (8th Cir. 1993) (before destruction mandated by departmental policy, police sampled and video taped marijuana plants); Malbrough, 922 F.2d at 463 (finding there was no bad faith when marijuana plants were destroyed after receiving court order to take random samples of the plants, and approval for their destruction); United States v. Doty, 714 F.2d 761, 764–65 (8th Cir. 1983); See also, United States v. Revolorio–Ramo, 468 F.3d 771, 775 (11th Cir. 2006) (finding there was no bad faith where the Coast Guard destroyed a fishing vessel but preserved the condition of the boat with still and video photographs, even if most of the images were unusable); United States v. Newsome, 322 F.3d 328, 334 (4th Cir. 2003) (finding that suppression of evidence was not required where, although the Government did not preserve the logs stolen from a National Forest, the defendant was given an opportunity to view photographs, have access to mill records, and an opportunity to cross-examine mill employees and Government Agents).

In the present case, law enforcement photographed the seized evidence of the drugs and paraphernalia before destroying it. (See, Def.'s Exs. 1–7.)  At the January 14, 2019, Motions Hearing, Defendant admitted, without objection, Exhibits 1–7, which are photographs of the drug and paraphernalia evidence that was destroyed by law enforcement. (January 14, 2019, Motions Hearing, Digital Recording at 3:00–3:01 p.m.). Because photographs of the evidence were preserved, and because Defendant is in possession of the photographs, Defendant has failed to show that CI Leyba acted in bad faith. See, Gray, 128 F.3d at 1110 (finding there was no bad faith

where the agent first photographed and sampled bottles containing ephedrine tablets before destroying the bottles).[7]

Furthermore, even assuming solely for the sake of argument that law enforcement acted in bad faith when it destroyed the drug and paraphernalia evidence, there is nothing in the record that shows that the evidence destroyed had any apparent exculpatory value in the present assault case. Rather, this Court has previously held that even evidence used to commit a crime does not necessarily have exculpatory value. See, United States v. Auginash, No. 17-cr-51 (ADM/LIB), 2017 WL 3190650, at *4 (D. Minn. June 14, 2017), report and recommendation adopted, No. 17-cr-51 (ADM/LIB), 2017 WL 3190565 (D. Minn. July 26, 2017). In Auginash, the defendants were charged with one count of discharging a firearm during the commission of a crime of violence. Id. at *1. When the defendants were arrested, law enforcement recovered the firearm used for the alleged crime but later returned the firearm to its owner. Id. at *4. The defendants argued that they suffered prejudice because the firearm was returned to its owner without the defendants being able to conduct testing on the firearm which might have produced some unknown exculpatory evidence. Id. This Court, however, disagreed and held that the defendants failed to demonstrate prejudice based on the return of the shotgun to its owner because the defendants did not provide any information to suggest it was likely or even probable that the examination would offer any exculpatory evidence. Id.

In the present case, there is even less reason to dismiss the Indictment on the basis of lost or destroyed evidence. Here the evidence that was destroyed, after being photographed, was drug

---

[7] Defendant alternatively argues that CI Leyba's training and experience should have informed him not to destroy the drug and paraphernalia evidence. While Defendant does not support his argument with any case law, at least one case has found that an officers' years of experience did not support a finding of bad faith. See, Martin v. Fanies, No. 08-cv-22 (PAM/JJK), 2009 WL 1047085, at *3 (D. Minn. Apr. 20, 2009) (finding that when officers erroneously destroyed evidence, the officers' years of experience was not enough to assume that the officer acted in bad faith). This Court finds Martin particularly persuasive and accordingly, finds that CI Leyba's experience in law enforcement, without more, is not indicative of bad faith.

and paraphernalia evidence entirely unrelated to the assault charges in the present Indictment, in contrast to the clear relevance of the lost shotgun to the indicted offenses charged in <u>Auginash</u>, supra. Thus, on the face of it, the destroyed evidence here is not in any way apparent exculpatory evidence for Defendant's assault charges.

Additionally, Defendant's argument that the destroyed evidence might aid in a possible intoxication defense to the assault charges is similarly unpersuasive. The United States Supreme Court, rather, has rejected similar arguments as a basis for demonstrating the exculpatory value of destroyed evidence. <u>See</u>, <u>Trombetta</u>, 467 U.S. at 489 ("Although the preservation of breath samples might conceivably have contributed to respondents' defenses, a dispassionate review of the Intoxilyzer and the California testing procedures can only lead one to conclude that the chances are extremely low that preserved samples would have been exculpatory.").

For these reasons, Defendant has failed to show that law enforcement acted in bad faith when it destroyed drug and paraphernalia evidence or that said evidence had any apparent exculpatory value in the present assault case.

Accordingly, the undersigned recommends that Defendant's Motion to Dismiss Indictment, [Docket No. 35], be **DENIED**.

## V.    CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED THAT**:

1.    Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 32], be **GRANTED**;

2.    Defendant's Motion for Hearing Pursuant to <u>Franks v. Delaware</u>, [Docket No. 33], be **DENIED as moot**; and

3.    Defendant's Motion to Dismiss Indictment, or alternatively to Suppress Evidence and Testimony Due to Destruction and Spoliation, [Docket No. 35], be **DENIED**.


Dated: March 8, 2019                                   s/Leo I. Brisbois
                                                                   Honorable Leo I. Brisbois
                                                                   U.S. MAGISTRATE JUDGE


**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.